In re Marian T. VANEGAS, Debtor.

Marian T. Vanegas, Movant,

v.

Windsor Federal Savings and Loan Association, Respondent.

No. 00–22320.

United States Bankruptcy Court, D. Connecticut.

March 5, 2003.

Joel M. Grafstein, Esq., Grafstein & Associates, Farmington, CT, for Debtor.

Deborah L. Dorio, Esq., Pease & Dorio, P.C., Farmington, CT, for Respondent.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The matter before the court in this Chapter 7 case is the objection of Marian T. Vanegas, the debtor, filed on September 19, 2002, to an unsecured proof of claim, filed on November 27, 2000, by Windsor Federal Savings and Loan Association ("the Bank"). The debtor contends, and the Bank denies, that the claim should be reduced from $51,171 to $6,000 in light of the following circumstances established at a hearing held on November 19, 2002.[1]

### II.

The debtor, on June 22, 1988, executed and delivered a mortgage and a mortgage

---

1. No issue is raised as to the standing of the debtor to file an objection to claim since the parties concede that the debtor's estate is solvent.

note for $64,000 to the Bank to finance her purchase of a condominium located at 1449 Boston Post Road, Westbrook, Connecticut ("the property"). By 1998 the mortgage loan had been in default for a number of years and had an unpaid balance of approximately $77,000. The Bank and the debtor, after discussion, then agreed that the debtor should sell the property in a "short sale." Under this arrangement, the parties intended for the debtor to sell the property at a sales price agreeable to the Bank. The Bank would then release its mortgage for less than payment in full, provided it received the net sale proceeds and the parties agreed on an amount and manner of payment of the loan deficiency. In the fall of 1998, the debtor secured a buyer to purchase the property for $28,000, a price acceptable to the Bank. By letter dated October 15, 1998, the Bank advised the debtor: "In order to speed this purchase, you will be required to sign a $6,000.00 deficiency note to help minimize the substantial loss the Bank is taking on this property." (Debtor's Ex. 4.)

The debtor's then attorney, on November 17, 1998, responded to the Bank's attorney, advising that since the debtor's financial circumstances were such that the debtor would be filing a bankruptcy petition "once she has lost ownership to her current residence in Windsor Locks, Connecticut" and that it was "very unlikely" the Bank "would receive payments on the note," the deficiency note should be for the full amount owed, in order for the debtor to avoid the nondischargeable income tax-es arising from a forgiven debt.[2] (Bank's Ex. A.) The Bank agreed, and at the property closing which took place on December 31, 1998, the Bank received the net sale proceeds of $25,889.20, and the debtor's promissory note for $51,171. This note had a five-year term, payable in monthly installments, starting February 1, 1999, of principal and interest of $1,037.56, with interest at eight percent per annum.

The debtor made no payments on this note. The Bank, by its attorney, on October 18, 1999, sent a letter to the debtor advising that collection proceedings would commence in the event the nine-month default in payments was not cured.

The debtor filed her bankruptcy petition on August 25, 2000, scheduling no nonexempt assets,[3] and three unsecured creditors with claims totaling $29,964, with the Bank listed with a claim of $28,798. The Chapter 7 trustee, on September 28, 2000, filed a "Report Of No Distribution," stating that there was no estate property available for distribution and certifying the estate had been fully administered. The trustee, on January 5, 2001, filed a withdrawal of this notice in light of the debtor becoming entitled, post-petition, to an inheritance from her mother's estate.[4] The trustee subsequently received $80,621.32 for the inheritance and filed an accounting on August 12, 2002, proposing to distribute to the Bank $51,171.00 plus $5,888.29 interest. As noted, the debtor filed her objection to the Bank's proof of claim on September 19, 2002.

2. See 26 U.S.C. § 61(a)(12) which provides that gross income includes "Income from discharge of indebtedness." 26 U.S.C. § 108(a)(1)(B) provides for exclusion from gross income if "the discharge occurs when the taxpayer is insolvent."

3. The debtor listed exempt assets with a total value of $57,534.34, including an interest in an IRA valued at $44,484.00.

4. Bankruptcy Code § 541(a)(5)(A) provides that a debtor's estate includes property which the debtor acquires by bequest, devise or inheritance within 180 days after the petition date.

## III.

The debtor, in her post-hearing memorandum of law, argues, *inter alia,* (a) that "the Bank has failed to meet its burden of proof" and (b) that "a meeting of the minds existed as to the deficiency following the sale of the debtor's property." (Debtor's Mem. at 4.) As to (a), the debtor contends, without any discussion, that the debtor's evidence overcame any presumption of validity of the Bank's proof of claim. As to (b), the debtor submits that the Bank should be bound by its original willingness to accept a note for $6,000 from the debtor as a deficiency on the mortgage loan, since the execution of a promissory note for $51,171 was "questionable as a tax avoidance tool. The underlying transaction must be a true loan rather than a sham transaction aimed solely at tax avoidance." (Debtor's Mem. at 7.)

The Bank insists that the deficiency note for $51,171 is valid; that the debtor never executed a $6,000 note; that there is no credible evidence of any misunderstanding or mistake on the part of the debtor; and that the Bank's actions throughout were legitimate and appropriate.

## IV.

### A.

 Fed. R. Bank. P. 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." An objecting party, accordingly, must provide evidence indicating the claim is not valid. *See In re Reilly,* 235 B.R. 239, 243 (Bankr.D.Conn. 1999). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *Id.* The court concludes that the evidence submitted by the debtor does not sufficiently overcome the validity and amount of the Bank's proof of claim.

### B.

 The court concludes that the record and arguments made do not justify the court upholding the debtor's contention that her responsibility to the Bank must be limited to $6,000. It was at the debtor's request that the Bank submitted and the debtor executed a deficiency note for the actual amount ($51,171) of the mortgage loan deficiency. The record made does not support the debtor's insinuation that the Bank participated in a sham transaction. *Cf. Dills v. Enfield,* 210 Conn. 705, 717–20, 557 A.2d 517 (1989) (holding that in the absence of a claim of impossibility of performance, fraud or other extraordinary circumstances, a party to a contract may not unilaterally change the agreement because circumstances have changed to his detriment). The debtor's arguments, at heart, are more pointed towards the action of Congress in enacting § 541(a)(5)(A) than anything that the Bank has done.

## V.

 The Bank, post-hearing, and on December 19, 2002, filed an amendment to its proof of claim, initially filed on November 27, 2000, to increase its claim to $58,990.87 by including accrued interest and late charges on its note as of the date the debtor filed her petition. A Bank officer had testified to such increase in the debt at the hearing. The debtor objects to the Bank's attempt to amend its proof of claim at trial two years after the original filing of the proof of claim. The court concludes that to allow such an amendment, whether at trial or post-hearing, would be inequitable. The Bank provided no justification for

its failure to file a timely amendment pre-hearing, and the court, in balancing the equities, concludes that the amendment should not be allowed. *Cf. Bishop v. United States (In re Leonard),* 112 B.R. 67, 71 (Bankr.D.Conn.1990) (noting that an important factor in considering whether an amendment would be equitable is whether there is a justification for the movant's failure to amend timely).

## VI.

In light of all that has been noted, the court denies the debtor's objection to the Bank's proof of claim, and further sustains the debtor's objection to the Bank's amendment of its proof of claim. It is

SO ORDERED.